Pattison v. Chicago City Ry. Co., 195 Ill. App. 527.

2. FRAUDS, STATUTE OF, § 2*—*when Statute of Frauds not applicable to instrument in writing.* Where the instrument sought to be enforced is in writing the Statute of Frauds has no application, though such instrument may have been given in pursuance of an oral agreement to pay the debt of another.

3. FRAUD, § 115*—*when evidence insufficient to establish fraud.* In a bill seeking relief against a note and trust deed on the ground of fraud, a finding that there was no fraud *held* sustained by the evidence.

4. APPEAL AND ERROR, § 1395*—*when findings of chancellor will not be disturbed.* Where a bill seeks relief against a note and trust deed on the ground of fraud and the evidence as to fraud is conflicting, the finding of the chancellor, after seeing and hearing the witnesses, that the allegation of fraud was not sustained by the evidence will not be set aside by a court of review unless manifestly against the weight of the evidence.

5. FRAUD, § 112*—*sufficiency of evidence to establish fraud.* Where fraud is relied on it must be proved by clear and convincing evidence.

6. FRAUD, § 87*—*not presumed.* Fraud is never presumed.

7. CANCELLATION OF INSTRUMENTS, § 37*—*when trust deed will not be canceled, but enforced on cross-bill.* Where a bill sought cancellation of a note and trust deed and where a cross-bill prayed the enforcement of the trust deed, a decree that unless complainant within twenty days paid the amount of the note secured by the trust deed sought to be enforced defendant might go to hearing on its cross-bill, *held* not inequitable although the debt for which such note was given was in part the debt of another, it appearing that complainant had received a gift of such other person's business, which she thereafter carried on for her own benefit, and it also appearing that in consideration of executing the note complainant had been given further time in which to make payment, and that further credit had also been extended to her in consideration thereof.

---

## William K. Pattison, Administrator, Appellee, v. Chicago City Railway Company, Appellant.

### Gen. No. 21,017.    (Not to be reported in full.)

Appeal from the Superior Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Affirmed. Opinion filed December 8, 1915. Rehearing denied December 21, 1915. *Certiorari* denied by Supreme Court (making opinion final).

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

## Statement of the Case.

Action by William K. Pattison, as administrator of the estate of Andrew Ziehler, deceased, plaintiff, against the Chicago City Railway Company, defendant, in the Superior Court of Cook county, to recover for the death of plaintiff's intestate. From a judgment for plaintiff for $6,000, defendant appeals.

The facts are as follows: On December 9, 1908, the defendant owned and operated street cars on State street, Chicago. State street extends north and south, and is intersected at right angles by 13th and 14th streets. The distance between these two last mentioned streets is about six hundred feet. On the east side of State street, and about the middle of the distance, was a large barn of the Dixon Transfer Company. There were two entrances to the barn from State street. The company was engaged in the teaming business, and had about two hundred wagons and teams. In front of the entrance to the barn on the east side of the street was an electric arc light. This entrance was about three hundred feet from 13th street and the same distance from 14th street. There was a similar light almost immediately west on the west side of State street. It was the custom of the Dixon Company to have a watchman or flagman, in the evening, in front of the barn entrance and near the street car tracks, to signal the motormen and the drivers of the teams, so as to prevent collisions. The flagman usually had a lighted lantern in his hand, but there was some evidence that the signals were sometimes given by the flagman waving his hand only. This custom was known to the drivers of the teams and to the street car men operating cars on State street, and had been in effect for a considerable period of time. During that season of the year, shortly before the holidays, teams would come into the barn from the day's work until after ten o'clock at night. On

the day in question, plaintiff's intestate, Ziehler, together with two other teamsters of the Dixon Company, were hauling for Butler Brothers, located near Canal and Randolph streets. Each of the three had a team and wagon. Two of the wagons were loaded at Butler Brothers, and the three started, about nine o'clock, for the barn, driving south on State street. As they reached about 13th street, plaintiff's intestate was in the lead, but at this point one of the other drivers, who did not have any load, drove ahead of him. They were all on the west side of the street. When the driver without a load was about opposite the barn, he was signaled by the flagman to drive to the barn, which he did. Plaintiff's intestate and the other driver waited on the west side of the street for their signal. The first team had gone into the barn, when the flagman signaled plaintiff's intestate to come to the barn, and at the same time signaled the motorman, who was coming north on the east track, to stop the car. The night was bright and a street car or team could be seen for about two blocks. As plaintiff's intestate drove east across the tracks, the car struck the rear wheel, throwing the wagon around to the north, and the plaintiff's intestate was thrown off on the pavement. The car ran some distance beyond the wagon and came to a stop. The injured man was placed on the platform of another car coming from the south and was taken to a hospital, where he died ten days later as a result of the injury.

There was considerable dispute as to the location of the car and the wagon at the time the signal was given by the flagman, some stating the car was near 14th street, which would be about three hundred feet south of where the flagman stood, and others placing it at a distance further north. There was also some conflict as to whether the flagman had a lantern in his hand, but there is no dispute that if he did have such a lantern, it was not lighted, it having acci-

dentally gone out, and that the signal was either given by his hand or by swinging the unlighted lantern. The motorman testified that he saw the signal, but thought it was someone who wanted to board the car as a passenger, and he paid no attention to the signal. The flagman had to jump off the track to escape being struck with the car, as he testified no effort was made to stop it. The motorman testified that the team driven by plaintiff's intestate came from behind a southbound car on the west track, and that he did not see the team until it was too late. Other witnesses testified that there was no other car in the vicinity, but that a car had proceeded south some time before. The deceased was a man thirty-seven years of age, weighed about 225 pounds, and was strong and healthy.

The court refused an instruction requested by defendant which told the jury that the defendant had a superior right of way over persons and wagons in the portion of the street occupied by its tracks, except at street intersections, having due regard to the rights and safety of persons in the street; that it was the duty of persons driving teams to recognize this right, "and when crossing the tracks, to do so in a manner not to obstruct or delay the same," and that if the jury believed from the evidence that the deceased, at the time in question, failed to recognize such superior right of way, "but, on the contrary, negligently attempted to cross the tracks, in front of the street car, without due regard to its superior right of way, and thereby caused or proximately contributed to cause the collision, then the plaintiff cannot recover in this case."

FRANK L. KRIETE and WATSON J. FERRY, for appellant; W. W. GURLEY and J. R. GUILLIAMS, of counsel.

PATTISON & SHAW and GORMAN, POLLOCK, SULLIVAN & LIVINGSTON, for appellee.

Schmidt v. Cooper, 195 Ill. App. 531.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

## Abstract of the Decision.

1. NEGLIGENCE, § 191*—*whether contributory negligence question for jury or court.* Although as a general proposition the question of contributory negligence is one of fact for the jury, yet where the inference of negligence necessarily results from the evidence the question becomes one of law for the court.

2. STREET RAILROADS, § 135*—*when contributory negligence question for jury.* In an action to recover for the death of plaintiff's intestate as a result of a collision between the team driven by deceased and an electric car alleged to have been negligently operated by defendant's motorman, the question whether deceased was guilty of contributory negligence *held* properly submitted to the jury under the evidence.

3. STREET RAILROADS, § 141*—*when instruction on negligence properly refused as too broad.* In an action to recover for the death of plaintiff's intestate as a result of a collision between the wagon deceased was driving and an electric car alleged to have been negligently operated by defendant's motorman, *held* not error to refuse an instruction which, in effect, told the jury that the car had the superior right of way; and deceased's failure to recognize such right of way by crossing in front of the car would preclude recovery if such failure caused or proximately contributed to the injury, for the reason that as framed the instruction was too broad, implying that such conduct of deceased was to be deemed negligence, whereas such instruction should have been so framed as to tell the jury that in case deceased failed to use due care not to obstruct or delay the car, plaintiff could not recover.

---

## George Schmidt, Appellee, v. Paul W. Cooper (Impleaded), Appellant.

### In the Matter of the Appeal of Paul W. Cooper. Gen. No. 21,749.

1. DEPOSITIONS, § 2*—*when master taking proof acts as examiner.* A person holding the office of master in chancery who is appointed by order of a court to take evidence in a proceeding, acts under